UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAKAN YUCESOY, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>UBER TECHNOLOGIES, INC., TRAVIS KALANICK, and RYAN GRAVES.<br><br>    Defendants. | CIVIL ACTION NO. <u>14-13938</u> |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Uber Technologies, Inc., Travis Kalanick, and Ryan Graves (collectively, "Defendants") hereby seek the removal of the above-captioned action from the Superior Court of the Commonwealth of Massachusetts, Suffolk County, to the United States District Court for the District of Massachusetts. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), because this matter was brought as a class action, diversity of citizenship exists between one or more members of the putative class and Defendants, the number of proposed class members exceeds 100 individuals, and the amount placed in controversy by Plaintiff's Complaint exceeds $5 million in the aggregate.

## I.  SUMMARY OF COMPLAINT

  1.  This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of class actions. See 28 U.S.C. § 1453.

  2.  On or about June 26, 2014, Plaintiff Hakan Yucesoy ("Plaintiff") commenced this action against Defendants by filing a Complaint in the Superior Court for the Commonwealth of Massachusetts, captioned *Hakan Yucesoy, on behalf of himself and others similarly situated v.*

*Uber Technologies, Inc., Travis Kalanick, and Ryan Graves,* C.A. No. 14-0576-C. A true and correct copy of the Complaint together with all process filed with the Suffolk Superior Court in the state court action is attached hereto as Exhibit A.

3.       On or about September 22, 2014, Plaintiff served Defendants with copies of the Complaint in this action.

4.       Plaintiff purports to bring and maintain this action as a class action under Massachusetts Rule of Civil Procedure 23 and Massachusetts General Law ("Mass. Gen. Laws") Chapter 149, Section 150. Compl. p. 7. Plaintiff seeks to represent the following class: "[A]ll Uber drivers (other than Uber taxi drivers) who have worked in Massachusetts." Compl. ¶¶ 4; 6.

5.       Plaintiff seeks a declaratory judgment that he and members of the putative class he seeks to represent are employees under Massachusetts law. He also seeks to recover expenses he claims were improperly incurred as a result of the alleged misclassification as independent contractors (such as expenses for maintaining or leasing vehicles, insurance, gas, phone data charges and other expenses), lost wages and other forms of restitution, damages for failure to remit the total proceeds of gratuities, interference with the receipt of gratuities, statutory trebling of wage-related damages, and attorneys' fees and costs on behalf of himself and the proposed class based on the following three causes of action: (1) misclassification of employees as independent contractors pursuant to Mass. Gen. Laws ch. 149, § 148B; (2) violation of the Massachusetts Tips Law – Mass. Gen. Laws ch. 149, § 152A; and (3) tortious interference with contractual and/or advantageous relations. Compl. pp. 5-7. Therefore, for purposes of this Notice of Removal, this matter is a class action as that term is defined pursuant to 28 U.S.C. §§ 1332(d)(1)(B) and 1453.[1]

---

[1]       Defendants do not concede, and reserve the right to contest, Plaintiff's allegation that this lawsuit may properly proceed as a class action.

II.     **THE REMOVAL IS TIMELY**

6.      Plaintiff served Defendants with the Complaint on September 22, 2014.  Because this Notice of Removal is filed within thirty (30) days of service of the Complaint on Defendants, it is timely under 28 U.S.C. §§ 1446(b) and 1453.

7.      No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

III.    **THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION**

8.      This Court has original jurisdiction based on diversity of citizenship under CAFA because this matter was brought as a class action, diversity of citizenship exists between one or more members of the putative class and Defendants, the number of proposed class members is 100 or greater, and the amount placed in controversy by Plaintiff's Complaint exceeds, in the aggregate, $5 million, exclusive of interests and costs.  28 U.S.C. §§ 1332(d), 1453.  No exception to the exercise of federal jurisdiction applies.  See, e.g., U.S.C. § 1332(d)(4)(A)-(B).  Removal under diversity jurisdiction is therefore proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

      A.  **Diversity of Citizenship Exists.**

9.      Plaintiff was at the time of the commencement of this action, and is now, a resident and citizen of the Commonwealth of Massachusetts.  See Compl. ¶ 3; Declaration of Michael Colman ("Colman Decl.") ¶ 4, Exhibit B.  (The Colman Declaration is attached hereto as Exhibit B.)

10.     Defendant Uber Technologies, Inc. ("Uber") was at the time of the commencement of this action, and is now, a privately-held company, incorporated in Delaware, with its principal place of business in San Francisco, California.  Compl. ¶ 7; Colman Decl. ¶ 3.

11.     Defendants Travis Kalanick ("Kalanick") and Ryan Graves ("Graves") were at the time of the commencement of this action, and are now, residents and citizens of the state of California.  Compl. ¶¶ 8-9; Colman Decl. ¶ 3.

12.     As a result, and for the purpose of 28 U.S.C. § 1332(a), there is complete diversity of citizenship between the named Plaintiff and Defendants.  28 U.S.C. § 1332(c)(1).

13.     To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists – that is, that one putative class member is a citizen of a state different from that of Defendants.  28 U.S.C. § 1332(d)(2).

14.     Based on the above, at least one member of the putative class is a citizen of a state different from Defendants, as Plaintiff is a citizen of Massachusetts, while none of the Defendants is a citizen of Massachusetts.  28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which any member of a class of plaintiffs is a citizen of a state different from any Defendant).

### B.  The Amount-In-Controversy Requirement Under CAFA Is Satisfied.

15.     CAFA provides for the aggregation of the claims of the individual members in a class action to determine if the amount in controversy exceeds the sum or value of $5 million, exclusive of interests and costs.  See 28 U.S.C. § 1332(d)(6).

16.     In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Report, S. Rep. 109-14, at 42 (2005).

17.     Where, as here, Plaintiff does not expressly plead a specific amount of damages, defendants must only show a reasonable probability that the amount in controversy exceeds $5 million.  Sierra v. Progressive Direct Ins. Co., Civil Action No. 12-30020-FDS, 2012 WL 4572923, at *2 (D. Mass. Sept. 28, 2012).  Plaintiff's likelihood of success on the merits is irrelevant to the question of the court's jurisdiction, as "the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover."  Manson v. GMAC Mortg., LLC, 602 F. Supp. 2d 289, 293 n. 6 (D.  Mass. 2009).  As "questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the issue should be resolved without an extensive fact-finding inquiry or 'mini-trial' about the amount in controversy."  Sierra, 2012 WL 4572923 at *2.

18.     While Defendants deny Plaintiff's claims and deny that Plaintiff or the putative class he purports to represent are entitled to the relief for which he has prayed,[2] it is clear that, when the maximum potential values of the claims of Plaintiff and the putative class members are aggregated, the allegations within Plaintiff's Complaint "more likely than not" put into controversy an amount in excess of $5 million.

### C. **Information Relevant To Establishing Application of CAFA.**

19.     Plaintiff's Complaint does not define the class period.

20.     The statute of limitations for Plaintiff's claims for unpaid wages stemming from his alleged misclassification as an independent contractor is three years.  Mass. Gen. Laws. ch. 149, § 150.

---

[2]     This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint.  Defendants refer to damages amounts and cite to comparable cases solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or the putative class he claims to represent.  Defendants specifically deny that Plaintiff has suffered any damage as a result of any act or omission by Defendants.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover these damages based upon the allegations contained in the Complaint or otherwise.

21.     The statute of limitations for Plaintiff's claim alleging violation of the Tips Law is three years. Id.

22.     The statute of limitations for Plaintiff's claim for tortious interference with contractual and/or advantageous relations is three years. LeGoff v. Trustees of Boston Univ., 23 F. Supp. 2d 120, 129 (D. Mass. 1998) (tortious interference with "advantageous" relations); Randal v. Boston Hous. Auth., CIV. A. 06-12120-RWZ, 2007 WL 3104758 (D. Mass. Sept. 19, 2007) (tortious interference with "contractual" relations).

23.     Thus, as Plaintiff filed his Complaint on June 26, 2014, the class period would be June 26, 2011 through the conclusion of this action.

24.     During the period of June 26, 2011 through October 4, 2014, thousands of individual operators and thousands of transportation companies in Massachusetts were parties to written agreements under which they were licensed to use Uber's Smartphone application for the purpose of obtaining lead generation services for potential third party customers seeking transportation services ("Transportation Providers").[3] Colman Decl. ¶ 6.

25.     During this period, Massachusetts consumers purchased far more than $25 million in transportation services from these Transportation Providers using Uber's Smartphone application.  These Transportation Providers drove, in the aggregate, well over 10 million miles in trips booked through the Uber application.  Id., ¶ 7.

26.     The Internal Revenue Service standard mileage rates used to calculate the deductible costs of operating an automobile for business purposes ranged from 51 cents per mile

---

[3] This figure represents the aggregate number of Transportation Providers providing services to consumers using Uber's UberX, UberSUV, and Uber Black Car applications. It does not include individuals providing services to consumers using Uber's Uber TAXI application.  Colman Decl. ¶ 6.

to 56 cents per mile during the class period.  See Exhibit C, IRS Standard mileage rates,

(available at: http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates/).

**D.  Plaintiff's Claims For Damages Exceed The CAFA $5 Million In Controversy Threshold.**

27.     In his first cause of action, Plaintiff alleges that Defendants violated the

Massachusetts Independent Contractor Law by misclassifying him as an independent contractor,

rather than an employee.  Compl., p.5 (Count I).  Plaintiff alleges that this misclassification

entitles him and the putative class to damages for, among other things, maintaining and/or

leasing their vehicles; insurance; gas; and other expenses.  Id.

28.     For purposes of this Notice only, Defendants' calculations assume that putative

class members incurred vehicle expenses enumerated in Plaintiff's Complaint based on the

lowest applicable IRS reimbursement rate during the class period.  Under this assumption, the

amount placed at issue by Plaintiff relating to the allegation referenced in Count I, *supra*, for

improperly incurred expenses far exceeds $5 million (well over 10 million miles times 51 cents

per trip mile).[4]  Colman Decl. ¶ 7.

29.     In his second cause of action, Plaintiff alleges that Defendants violated the

Massachusetts Tips Law by failing to remit the total proceeds of gratuities to Transportation

Providers.  Plaintiff effectively alleges that this figure represents at least 20% of the

---

[4] Defendants based the calculation of Plaintiff's alleged improper vehicle expenses upon the IRS reimbursement rates for mileage.  See Internal Revenue Bulletin:  2010-51 (available at: http://www.irs.gov/irb/2010-51_IRB/ar14.html#d0e1940) ("A taxpayer computes a deduction using the business standard mileage rate on a yearly basis and in lieu of computing the fixed and variable costs of the automobile allocable to business purposes []. Items such as depreciation or lease payments, maintenance and repairs, tires, gasoline (including all taxes thereon), oil, insurance, and license and registration fees are included in fixed and variable costs for this purpose.") Plaintiff's counsel recently argued the IRS reimbursement rate to be the proper measurement of these expenses in a brief currently before the Massachusetts Supreme Judicial Court.  See Exhibit D, Brief of Plaintiffs-Appellants in the matter of Schwann et al. v. Fedex Ground Package System, Inc., p. 4, n. 5.

transportation services consumers purchased from Transportation Providers during the class period.  See Compl. ¶¶ 14; 17; 18; 20-21.[5]

30.     If Transportation Providers had received an additional 20% tip for every trip booked using Uber's Smartphone application, they would allegedly have amassed more than $5 million in tips, based upon 20% of gross transportation services (at least $25 million) purchased during the class period.

31.     When trebled under Mass. Gen. L. c. 149, § 150, the amount Plaintiff may place in controversy with respect to the alleged Tips Law violation significantly exceeds $15 million.

32.     When trebled under Mass. Gen. L. c. 149, § 150, the amount Plaintiff may place in controversy with respect to alleged improper expenditures significantly exceeds $15 million.

### E.  Summary of Amount In Controversy.

33.     Thus, although Defendants expressly deny Plaintiff's allegations and theories of recovery, and expressly deny that he or the putative class he purport to represent is entitled to any of the requested relief, the amount in controversy associated with Plaintiff's aggregated claims clearly exceeds the $5 million threshold set forth under 28 U.S.C. § 1332(d)(2).

34.     Based on the categories of damages and calculations outlined above, the amount placed in controversy by the allegations in Plaintiff's Complaint exceeds $30 million as follows:

- Vehicle Expenses:          at least $5 million (at least 10 million miles X $.51)
- Unrealized Tips:           at least $5 million[6] (20% of at least $25 million)
- **TOTAL (trebled)[7]:**        at least **$30 million**

---

[5] In addition, Plaintiff's Count III for tortious interference with contractual and/or advantageous relations is a "deterred" tipping theory, wherein Plaintiff alleges that he was completely denied tips based upon Uber's purportedly false advertising.  This is an alternative theory Plaintiff advances to obtain what he claims is a 20% "customary" industry standard tip on fares.  See Compl., ¶ 17.

[6] Purportedly recoverable under the multiple theories advanced in Counts II and III of the Complaint.

[7] Per Mass. Gen. Laws ch. 149, § 150.

This calculation of the amount in controversy does not take into account Plaintiff's demand for attorneys' fees. See Lenahan v. Dick's Sporting Goods, Inc., Civil Action No. 10-11832-RGS, 2010 WL 5092254 at *1 (D. Mass. Dec. 8, 2010) (stating that attorneys' fees are properly included in amount in controversy calculations); Spielman v. Genzyme Corp., 193 F.R.D. 19, 21 (D. Mass. 2000) (finding that attorneys' fees can be included in the assessment of the amount in controversy when provided by statute).[8]

### F.   No Exceptions to CAFA Jurisdiction Apply.

35.   CAFA provides for two primary exceptions to the exercise of federal jurisdiction, the so-called "home-state" and "local controversy" exceptions. See 28 U.S.C. §§ 1332(d)(4)(A)-(B). Both exceptions require, inter alia, at least one defendant to be a citizen of the state in which the action was originally filed. Id. Plaintiff bears the burden of proof as to the applicability of these exceptions. Manson, 602 F. Supp. 2d at 295; S. Rep. No. 109-14 at 42 (exceptions to CAFA jurisdiction should be interpreted narrowly and doubts should be resolved "in favor of exercising jurisdiction over the matter"). Plaintiff cannot meet his burden of proving that either exception applies because Defendants are not citizens of Massachusetts. See ¶¶ 10, 11, supra.

## IV.   THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

36.   As set forth above, this Notice of Removal is filed within thirty days of service of the Complaint upon Defendants.

---

[8] In the event the Court requires more precise amount in controversy calculations, Defendant is prepared to submit, for in camera review and subject to an "attorneys' eyes only" protective order, specific information regarding the number of putative class members and aggregate fares and trip mileage during the Measuring Period. However, Defendant submits that the information provided herein and attested to under penalty of perjury suffices to show a reasonable probability that the amount in controversy exceeds $5 million.

37.     As Plaintiff originally filed this action in the Superior Court of the Commonwealth of Massachusetts, removal to the United States District Court for the District of Massachusetts is proper under 28 U.S.C. § 1441(a).

38.     As required by 28 U.S.C. § 1446(d), Defendants will provide notice of this removal to Plaintiff through his attorneys of record.

39.     As required by 28 U.S.C. § 1446(d), Defendants will file a copy of this Notice with the Superior Court of the Commonwealth of Massachusetts.

40.     If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief in support of their position that this case is removable and that CAFA's limited exceptions to federal jurisdiction are inapplicable.

**WHEREFORE**, Defendants, desiring to remove this case to the United States District Court for the District of Massachusetts, pray that the filing of this Notice of Removal shall effect the removal of this action to this Court.

Dated: October 21, 2014

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP

By: */s/ Lisa Stephanian Burton*
    Lisa Stephanian Burton (BBO 562016)
    Peter J. Mee (BBO 677081)
    225 Franklin Street, 16th Floor
    Boston, MA 02110
    Telephone: 617.341.7700
    Facsimile: 617.341.7701
    lburton@morganlewis.com
    pmee@morganlewis.com

    Robert Jon Hendricks
    One Market, Spear Street Tower
    San Francisco, CA 94105-1596
    Telephone: 415.442.1204
    Facsimile: 415.442.1001
    rhendricks@morganlewis.com

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on October 21, 2014, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel registered for ECF service and by first class mail, postage prepaid to:

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
sliss@llrlaw.com

    */s/ Lisa Stephanian Burton*
    Lisa Stephanian Burton